OPINION
{¶ 1} Erie Insurance Company (hereinafter "Erie") is appealing the judgment of the Darke County Common Pleas Court, which denied its motion for summary judgment and granted summary judgment to Nationwide Insurance Company (hereinafter "Nationwide") and Benjamin Powell on the issue of whether Jason Massie was an "insured" under an insurance contract issued by Erie to Massie's employer, Greenville Glass Company.
 {¶ 2} This action arose out of a single car accident in which Benjamin Powell and Jason Massie were riding in the vehicle. The truck owned by Massie veered off the road and struck a tree. Both Massie and Powell were intoxicated at the time of the accident. Therefore, neither Massie nor Powell remember who was driving at the time of the accident but each believes the other was the operator of the vehicle when the truck hit the tree.
 {¶ 3} Powell brought a personal injury claim against Massie and uninsured/underinsured motorist claims (hereinafter "UM/UIM") against Nationwide and Erie in Darke County case number 00-CV-58179. Powell's father had a UM/UIM policy covering Powell through Nationwide. Subsequently, Erie filed a declaratory action in Darke County case number 02-CV-59851, seeking a determination as to whether the Erie policy provided liability coverage to Massie. Nationwide and Powell were named in Erie' amended complaint as parties with potential interest in the outcome of the litigation. Both Powell and Nationwide filed counterclaims against Erie seeking Declarations that Massie had liability coverage under the Erie policy. Further, Nationwide sought a Declaration that because Massie had liability coverage under the Erie policy and the liability limits of the Erie policy were greater than the UM/UIM limits of the Nationwide policy, no UM/UIM coverage would be available to Powell pursuant to the Nationwide policy.
 {¶ 4} Massie filed an answer to the declaratory action in which he admitted that he was not entitled to liability coverage under the Erie policy. Based partially on this answer, Erie moved for summary judgment. Both Powell and Nationwide opposed Erie's motion for summary judgment. Nationwide also filed a motion for summary judgment. Subsequently, Massie sought and received permission from the trial court to file an amended answer based on newly discovered evidence. Erie filed a motion to strike the amended answer. However, this was overruled along with Erie's motion for summary judgment on May 8, 2003. Nationwide's motion for summary judgment was granted on the issue of whether Massie was an insured under the Erie policy.
 {¶ 5} Erie has filed this appeal from the trial court's decision, raising the following assignments of error:
 {¶ 6} "1. The trial court erred in overruling erie's motion to strike the amended answer of jason massie.
 {¶ 7} "2. The trial court erred in holding that defendant-appellee, nationwide mutual insurance company, had standing to file a motion for summary judgment in support of coverage for jason massie under the erie policy.
 {¶ 8} "3. The trial court erred in finding that jason massie was an insured for the purposes of liability coverage under the insurance contract between erie and greenville glass."
 {¶ 9} Nationwide has raised the following assignment of error in its cross-appeal:
 {¶ 10} "The trial court erred when it held that there is a material question of fact as to whether jason massie provided prompt notice."
 {¶ 11} As it is dispositive of the case, we will address Erie's third assignment of error first. Erie argues that the trial court erred in determining that the Erie policy provided liability coverage to Massie. We agree.
 {¶ 12} "The construction of a written contract is a matter of law that we review de novo. Our primary role is to ascertain and give effect to the intent of the parties. We presume that the intent of the parties to a contract is within the language used in the written instrument. If we are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract." Saunders v.Mortensen 101 Ohio St.3d 86, 88, 2004-Ohio-24. (Citations omitted.)
 {¶ 13} A commercial auto policy issued to a corporation generally intends to insure the corporation against liability arising from the use of motor vehicles. Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 222, 2003-Ohio-5849; King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211. Typically, an employee's activities that occur outside the scope of employment are of no direct consequence to the employer as an employer does not risk legal or financial liability from an employee's operation of a non-business-owned motor vehicle outside the scope of employment. Galatis, supra.
 {¶ 14} In the Erie Policy's DEFINITIONS section, it states:
 {¶ 15} "Throughout your policy and its endorsement forms, the following words have a special meaning when they appear in bold type:
 {¶ 16} "* * *
 {¶ 17} "`anyone we protect' means any person or organization we specifically state is protected under the coverage being described. In the RIGHTS AND DUTIES-GENERAL POLICY CONDITIONS section, `anyone we protect' means:
 {¶ 18} "1. you and
 {¶ 19} "2. persons or organizations listed under PERSONS WE PROTECT in the LIABILITY PROTECTIONS Section.
 {¶ 20} "* * *." Erie policy p. 3.
 {¶ 21} The Erie policy's "PERSONS WE PROTECT" section stated:
 {¶ 22} "The term `anyone we protect' means any person or organization listed below:
"1. You for any auto we insure;
"2. Anyone else while using an auto we insure with your permission, except:
"a. the owner or anyone else from whom you borrow or hire anauto we insure * * *
"b. Your employee if the auto we insure is owned by that employee or a member of the employee's household;
"c. anyone who uses an auto we insure in a business that sells, repairs, services or parks autos, unless the business isyours;
"d. anyone other than your employees, partners, a borrower or lessee or any of their employees, while loading or unloading anauto we insure;
"e. your partner while using an auto owned by that partner or a member of his or her household and not described on theDeclarations or an auto that does not replace one so described.
"3. anyone legally responsible for the conduct of anyone weprotect as described above, to the extent of that responsibility." Erie's policy p. 6.
 {¶ 23} The Erie policy defines the terms "you," "your," and "named insured" to mean "the person(s) or organization(s) named in Item 1 on the Declarations." "Item 1" was not included in the copy of the Erie policy provided to the Court. However, Erie submitted the affidavit of David Morgan, an Erie representative, who stated "Item 1" equates only to Greenville Glass, but that the computer print out had erroneously omitted the words.
 {¶ 24} The Declarations pages of the Erie policy also lists the following terms:
 {¶ 25} "AUTO 1 FURNISHED TO JASON MASSIE
 {¶ 26} "* * *
 {¶ 27} "AUTO 1 — UNMARRIED MALE OCCASIONAL DRIVER AGE 20 WITH DRIVER TRAINING
 {¶ 28} "* * *
"DRIVER: 9 JASON MASSIE 8/12/76."
 {¶ 29} Finally, the liability portion of the Erie policy defined "Autos We Insure" as follows:
 {¶ 30} "The Declarations shows which of the following areautos we insure under this policy:
"1. Owned Autos
a. "a. These are autos described on the Declarations but only for coverages for which a premium charge is shown.
"* * *
"2. Hired Autos. These are autos you, or your employee while on your business, hire, rent or borrow for use in your
business, but only for coverages for which a premium charge is shown. They cannot be owned by your employees or partners, or members of their households.
"3. Non-Owned Autos. (Employer's non-Ownership Liability). These are autos you do not own, hire, rent or borrow that are used in your business, but only for coverages for which a premium charge is shown. This includes autos owned by your partners, employees or member of their households, but only while used in your business or personal affairs.
 {¶ 31} "* * *." Erie policy p. 5.
 {¶ 32} Based on its review of the Erie policy, the trial court determined that Massie was a "named insured" under the Erie policy for the 1986 Cadillac DeVille. Additionally, the trial court concluded that Massie was covered by the "non-owned autos" section of the "autos we insure" definition including "autos owned by your partners, employees, or members of their households, but only while used in your business or personal affairs." The trial court determined that this definition covered autos owned by employees while they were used in personal affairs. The trial court did not conclude that the autos had to be used in Greenville Glass's personal affairs, but that it could be being used for the employee's personal affairs.
 {¶ 33} We agree with Erie that this conclusion was in error. The term "you" or "your" was used consistently throughout the Erie policy to refer to the company that purchased the policy, Greenville Glass. Therefore, the policy's reference to autos "while used in your business or personal affairs" refers to autos being used for Greenville Glass's business or personal affairs. Despite Nationwide and Powell's arguments, a company can indeed have personal affairs, such as office parties, company picnics, or company sponsored athletic events. Reading the provision "your business or personal affairs" to mean an employee's business or personal affairs gives an inconsistent meaning to the term "your" as it was used in the policy. Rather, the provision was covering vehicles that were being used for Greenville Glass's business or personal affairs. However, the accident underlying this action was not as a result of such use.
 {¶ 34} Even if we were to agree that the policy provision "while used in your business or personal affairs" was ambiguous and could cover employees while using their vehicle in their own personal affairs, such an interpretation would be contrary to the guidelines established in the Supreme Court's decision inGalatis, supra. In Galatis, the Court cautioned that although generally insurance contracts are interpreted against the insurer, this is only true if such an interpretation is in favor of the policyholder. Id. Therefore, an interpretation that is contrary to an insurer's interests should not be adopted if it is also contrary to the interests of the contracting party who purchased the insurance policy. Id. The Galatis Court specifically addressed situations where a company purchases a commercial auto policy from an insurance company. Id. TheGalatis Court found that an interpretation of the policy to cover employees while not acting within the scope of their employment is contrary to the interests of the company that contracted to purchase the policy as it would result in an increase in premiums. Id. Thus, even if the Erie policy provision was ambiguous, it should not be interpreted in favor of covering employees while engaging in their personal affairs as Nationwide and Powell argue. Thus, the trial court erred in determining that the Erie policy provided liability coverage to Massie based on the "Non-Owned Autos" definition of the policy.
 {¶ 35} However, we note that at oral argument Erie's counsel stated that Massie was listed on the Declarations page because he was the stepson of a corporate officer. This fact may distinguish this case from a typical commercial auto policy issued to a corporation. The policyholder, Greenville Glass, in this case may have sought more than mere protection for the company from liability arising from the actions of its employees. A strong probability exists that the policyholder intended to cover Massie in the Cadillac DeVille regardless of whether he was acting within the scope of his employment. However, this intent could be accomplished through the "permissive use" clause of the Erie policy and does not necessitate a finding that Massie was a "named insured." Therefore, we conclude that even in this unique factual situation the terms "you", "your", and "named insured" only refer to Greenville Glass.
 {¶ 36} We must now look to the remainder of the Erie policy to determine if it provided liability coverage to Massie. Upon examining the Declarations page of the policy, Erie asserts that Massie had liability, property damage, and UM/UIM coverage when he was driving the 1986 Cadillac DeVille that was furnished to him, but that he had no coverage for his own vehicle, the truck. Moreover, Erie asserts that Massie's name being listed on the Declarations page did not make him a "named insured." Erie asserts that the only "named insured" in the policy was the company "Greenville Glass," because that was the only person or organization named in "Item 1" of the Declarations.
 {¶ 37} Nationwide and Powell argue that Massie's inclusion in the Declarations page created a genuine issue of material fact as to whether he was a "named insured" or a "you" under the policy. The trial court concluded that Massie was a "named insured" but only while operating the Cadillac DeVille. We do not agree. We have determined that "you" was consistently applied throughout the Erie policy to only refer to "Greenville Glass." If we were to conclude that Massie was a "named insured" for the Cadillac DeVille, this would read ambiguity into the policy as "you" could mean both Massie and Greenville Glass as well as the other two individuals named on the Declarations page. As a result of this interpretation, we conclude that Massie and the others named on the Declarations page only qualify as "anyone we protect" under the "PERSONS WE PROTECT" section through the "permissive use" clause. The "permissive use" clause defines "anyone we protect" as "anyone else while using an auto we insure with your permission, * * *." Massie would be covered while using the Cadillac DeVille under this clause of the policy.
 {¶ 38} We note that Nationwide and Powell argue that under the "permissive use" clause, there was no need to name Massie on the Declarations sheet. Thus, they assert that since he was named on the Declarations then he must be a "named insured." However, Massie was only listed twice on the Declarations page, once as the individual "Auto 1" was furnished to and the second time to indicate a discount on the premium because of driver's training he had completed. We are reluctant to state that this indicates he was a "named insured." Rather, we find persuasive Erie's argument that Massie was named on the Declarations page because Greenville Glass received a discounted premium because he had completed driver training. We do not find that Massie's name on the Declarations sheet raises a genuine issue of material fact as to whether he was a "named insured."
 {¶ 39} Since Massie only qualifies as an insured under the "permissive use" clause, his coverage was subject to the exclusions set out under this clause. The second exclusion under the "permissive use" clause excludes coverage for "your employee if the auto we insure is owned by that employee or a member of the employee's household." In this case, the vehicle in which Massie and Powell were injured was Massie's truck. Since Massie, an employee, owned the vehicle in which the accident occurred, he was excluded from liability coverage under the second exclusion provided under the "permissive use" clause. Thus, Massie was not an insured under the "permissive use" clause when operating his own vehicle.
 {¶ 40} As we have determined above that Massie was not a "named insured" or a "you" in the policy, he was not insured under the Erie policy under any of the other clauses in the "PERSONS WE PROTECT" section of the policy. Thus, as Massie was not an insured under the "permissive use" clause or any other clauses in the Erie policy, it did not provide liability coverage for Massie while he was operating his truck. The trial court erred in concluding to the contrary and in overruling Erie's motion for summary judgment while granting Nationwide's motion for summary judgment in part. Erie's third assignment of error is sustained, and the judgment of the trial court is reversed.
 {¶ 41} The remaining assignments of error are rendered moot by this court's determination of Erie's third assignment of error. The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.
Brogan, J. and Wolff, J., concur.